**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **E.B., D.B., and H.B.**

**No. 21-0592** (Randolph County 21-JA-004, 21-JA-005 and 21-JA-006)

**MEMORANDUM DECISION**

Petitioner Grandmother M.L., by counsel Phillip S. Isner, appeals the Circuit Court of Randolph County's June 25, 2021, order terminating her guardianship and custodial rights to E.B., D.B., and H.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and William P. Jones, filed a response in support of the circuit court's order. The guardian ad litem, Melissa T. Roman, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) adjudicating her as an abusing guardian, (2) denying her request for a post-adjudicatory improvement period, (3) not permitting counsel to cross-examine the guardian ad litem, and (4) terminating her guardianship and custodial rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2021, the DHHR filed an abuse and neglect petition alleging that petitioner and her husband allowed the children to have contact with their parents, whose parental rights were terminated in a prior abuse and neglect proceeding due to substance abuse. The DHHR further alleged that the children's father was suspected of sexually abusing then four-year-old D.B. and then six-year-old H.B. According to the petition, D.B.'s vaginal area was red and bruised, and she had a rash on her groin and on her back. The DHHR further alleged that the children arrived at

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

daycare unclean with matted hair, soiled clothing, and smelling of urine. According to the petition, daycare workers often observed bruising and scrapes on the children and, on one occasion, observed then two-year-old E.B. had a black eye. The black eye was blamed on being hit with a cell phone. The next month, petitioner waived her preliminary hearing.

The DHHR filed an amended petition in April of 2021, alleging that the children expressed additional fear of being hurt if they returned to petitioner's home due to their past trauma. The DHHR alleged that the children conveyed these fears to their new foster parents. Later that month, the circuit court held an adjudicatory hearing wherein H.B.'s therapist testified that during therapy sessions in June of 2019, the child undressed a male and female doll and played with the dolls in a way suggesting that the dolls were performing sexual acts. The therapist further testified that H.B. disclosed that she had seen her parents perform similar acts and that her father had done similar acts to her. The therapist indicated that she shared with petitioner her concerns that H.B. had been sexually abused. The therapist shared her professional opinion that exposing a child to a sexual offender, regardless of whether the contact was supervised, was detrimental to the child's best interest. Next, a Child Protective Services ("CPS") worker testified that she also informed petitioner about concerns that H.B. was being sexually abused by the father. The worker further testified that she warned petitioner that if she allowed the parents to have further contact with the children, the children could be removed from her home. The worker indicated that petitioner also failed to observe supervised visitation rules during the prior abuse and neglect proceeding, prior to the termination of the parents' parental rights. A special education teacher and owner of the children's daycare testified that she noticed significant regression in the children's potty training in December of 2020. The teacher testified that D.B. would wet herself and played with dolls in a sexual manner. The teacher indicated that she observed severe redness and bruising on D.B.'s genital area and, after concluding it was inconsistent with a diaper rash, reported the incident to law enforcement. Finally, a second CPS worker testified she also observed D.B.'s genital area and noticed redness and bruising on the child's inner thigh and buttocks. The worker further testified that H.B. disclosed to her that the children had contact with their parents every day. The worker indicated that D.B. eventually disclosed to her that the father had hurt her and that petitioner had told her "not to talk to people like [the worker]." The worker further testified that when she questioned petitioner regarding D.B.'s redness and bruising, petitioner denied any such observations and believed it to be caused by the child falling off of a bar stool.

After hearing the evidence, the circuit court found that petitioner failed to protect the children from contact with their parents, resulting in abuse and further mental trauma to the children. The court further found that petitioner admitted knowing that the father was alleged to have sexually abused H.B. and D.B. and was further advised by the guardian and a CPS worker not to ever allow contact between the children and the father. Despite her knowledge of the prohibition, the court found that petitioner allowed the parents to have contact with the children. The court further found that the father participated in a drug screen at a prior hearing that was positive for methamphetamine. The court also found that petitioner failed to provide the children with proper hygiene and care and neglected to seek medical attention for D.B.'s severe redness and bruising on her genital area. Finally, the court found that petitioner attempted to coach the

children not to speak with service providers and that the children were subjected to excessive corporal punishment, resulting in their fear of petitioner.

In June of 2021, the circuit court held a dispositional hearing, wherein petitioner moved for an improvement period while the DHHR opposed petitioner's motion and moved for the termination of petitioner's guardianship and custodial rights. In support of her motion, petitioner testified that she realized after the adjudicatory hearing that the children's parents still have a substance abuse problem and that she accepted responsibility for allowing the children around them. However, a CPS worker testified that the DHHR was opposing petitioner's motion for an improvement period because petitioner failed to protect the children from sexual abuse. The worker also testified that the children expressed their wishes not to return to petitioner's home. Finally, petitioner's counsel attempted to call the guardian ad litem as a witness, which the court denied. In denying petitioner's motion, the court explained that the Rules of Procedure for Child Abuse and Neglect Proceedings preclude the guardian from testifying as to the contents of her report and recommendations.

At the conclusion of the hearing, the circuit court denied petitioner's motion for an improvement period. In light of the evidence presented at the dispositional hearing, the circuit court found that there was "no doubt in the [c]ourt's mind that" petitioner loved the children. The court also found that petitioner loved the children's parents, which affected her objectivity. However, the court found that petitioner had refused to accept that the children were sexually abused or that the children's parents continued to abuse controlled substances, despite clear evidence of both circumstances. As a result, the court found that petitioner was not likely to substantially correct the deficiencies that led to the filing of the petition because petitioner had not truly and fully accepted responsibility for her role in the abuse and neglect of the children. Based upon this evidence, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interests of the children to terminate petitioner's guardianship and custodial rights.[2] The circuit court entered an order reflecting its decision on June 25, 2021. Petitioner appeals from this order.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However,

[2]The parents' parental rights were terminated during a prior abuse and neglect proceeding. According to the parties, the permanency plan for the children is adoption in their current foster home.

3

a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

First, petitioner argues that the circuit court erred in adjudicating her as an abusing guardian and custodian. According to petitioner, she was under the impression that she was permitted to allow contact with the children's parents if they were sober and she supervised any visitation. She contends that she did not know the parents were continuing to abuse controlled substances. Petitioner further argues that there was no evidence to support the contention that the children had a lack of hygiene and medical care or were subject to excessive corporal punishment, other than uncorroborated testimony. As such, petitioner argues there was insufficient evidence to adjudicate her as an abusing guardian and custodian. We disagree.

We have previously held as follows:

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id*. at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted).

Having reviewed the record, we find that sufficient evidence existed to adjudicate petitioner as an abusing and neglecting guardian of the children. On appeal, petitioner's arguments in support of this assignment of error are all predicated on her assertions that the circuit court erroneously weighed the evidence in question. However, the rulings to which petitioner cites all come down to the issue of credibility, and as this Court has long held, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997).

First, petitioner argues that she was "under the impression" that the children were allowed contact with their parents during the proceedings, despite the fact that their parental rights had been terminated. However, this is contrary to the majority of evidence presented at the adjudicatory hearing. At various points throughout the proceedings, multiple CPS workers, a special education teacher, and the children's therapist testified as to petitioner's actions. Specifically, the children's

therapist and a CPS worker testified at the adjudicatory hearing that the children were likely sexually abused by the children's father and that they both had warned petitioner of the possible abuse. The therapist further testified at the adjudicatory hearing that H.B. disclosed that she had seen her parents perform sexual acts and that her father had done similar acts to her. While petitioner argues that she thought supervised contact with the children was permitted, the therapist also shared her professional opinion that exposing a child to a sexual offender, regardless of whether the contact was supervised, was detrimental to the child's best interest. Further, a CPS worker testified that she warned petitioner that if she allowed the parents to have further contact with the children, they could be removed from petitioner's home. This clearly contradicts petitioner's claims that she thought the parents were allowed contact with the children.

Next, petitioner claims there was insufficient evidence to conclude that she did not provide proper hygienic or medical care to the children. Petitioner notes that the evidence largely stemmed from the testimony of a single daycare worker. Petitioner contends that no other testimony was presented demonstrating a lack of the children's proper hygiene and that the daycare worker's testimony alone cannot be considered "clear and convincing evidence" of abuse and neglect of the children. Petitioner also argues that the "only evidence about lack of medical care" stemmed from redness and bruising on D.B.'s genital area. While petitioner argues that there was "no other testimony," beyond the daycare worker's testimony, she ignores the fact that the circuit court resolved this credibility determination against her. Further,

> "[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted).

The daycare worker—who is also a special education teacher and the owner of the children's daycare—testified that she noticed significant regression in the children's potty training. The worker testified that D.B. would wet herself and played with dolls in a sexual manner. The worker further indicated that she observed severe redness and bruising on D.B.'s genital area and reported the incident to law enforcement. Petitioner contends that evidence of redness and bruising on the child's genitals is insufficient evidence because the worker admitted that it could have been caused by a diaper rash. However, petitioner ignores the worker's testimony that she did not think the bruising was consistent with a diaper rash. While petitioner is correct in her assertion that the child was not observed by a sexual assault nurse examiner, a CPS worker testified that she also observed D.B.'s genital area and noticed redness and bruising on the child's inner thigh and buttocks. In light of the above evidence, the circuit court properly found that the children were at risk of sexual abuse from their father and that petitioner was aware of said abuse, ignored it, and allowed the children to have continued contact with the father suspected of committing the sexual abuse. The circuit court also properly found that the children demonstrated poor hygiene and were

5

at continued risk of in petitioner's care. Accordingly, we find no error in the circuit court's adjudication of petitioner.

Next, petitioner argues that the circuit court erred in denying her a post-adjudicatory improvement period. In support of her assertion, petitioner argues that she was unaware that the children were not permitted contact with the parents but would prevent any future contact. Petitioner also claims that she accepted responsibility for "not making more of an effort to ensure that the parents were not using controlled substances." We find petitioner's arguments unavailing.

This Court has held that an individual "charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000). West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a post-adjudicatory improvement period when the parent or custodian "demonstrates, by clear and convincing evidence, that the[y are] likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . [guardian] to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Further, we have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

Contrary to petitioner's argument, we see no error in the circuit court's determination that petitioner was not likely to fully participate in an improvement period. The circuit court found that petitioner failed to acknowledge or take any responsibility for the conditions that led to the abuse and neglect of the children. While petitioner argues that she proved she was likely to participate in an improvement period by stating she would prevent any future contact between the parents and the children and accepting responsibility for her mistakes, she failed to do so until the final dispositional hearing. Throughout the proceedings, CPS caseworkers testified to petitioner's lack of candor and acknowledgement of wrongdoing. Specifically, petitioner allowed the parents to have contact with the children despite repeated warnings that allowing such contact could result in the termination of her guardianship rights. As such, there is ample evidence that petitioner's repeated failures to acknowledge the conditions of abuse and neglect resulted in her inability to establish that she was likely to fully participate in an improvement period. Given this evidence, we find no error in the circuit court's decision to deny petitioner a post-dispositional improvement period.

6

Next, petitioner raises an argument regarding the circuit court's decision to not allow her counsel to cross examine the guardian ad litem. Petitioner argues that by denying her that opportunity, her ability to present her case was prejudiced. However, in her brief on appeal, petitioner fails to cite to any legal authority in support of this assignment of error. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that "[t]he brief must contain an argument exhibiting clearly the *points of* fact and *law presented . . . and citing the authorities relied on*, under headings that correspond with the assignments of error." (Emphasis added). Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court specifically noted in paragraph two that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. Here, petitioner's brief regarding this assignment of error is inadequate as it fails to comply with West Virginia Rule of Appellate Procedure 10(c)(7) and our December 10, 2012, administrative order. Accordingly, the Court will not address this assignment of error on appeal.

Lastly, petitioner takes issue with the timeframe from adjudication to termination, arguing that she should have been given additional time and an opportunity to demonstrate that she could correct the conditions of abuse and neglect. However, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4, in part (citation omitted). Further, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the termination of petitioner's guardianship and custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 25, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: January 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton